## THE MARY AUGUSTA.

### LOW v. THE MARY AUGUSTA.

### HIGGINS et al. v. LOW et al.

(District Court, D. Connecticut. April 17, 1893.)

1. COLLISION—SAILING VESSELS—RIGHT OF WAY.

The schooner A. was sailing free before the wind at night, on a course about E. by S., while the schooner T. was sailing closehauled upon her port tack on a course about W. ½ N. Each vessel kept her course until they were close together, when the A. put her helm up and kept off. The T. did the same almost immediately. Then the A. put her helm hard down and struck the T. on her port quarter. *Held*, that the A. was in fault, being bound to keep out of the way, and that the T.'s change of course, if an error, was an error in extremis.

2. SAME—CREDIBILITY OF WITNESSES.

The principal defense of the A. was the absence of a red light on the T., to establish which the evidence of the captain of the A. and one of his seamen that they did not see the light was offered, and the testimony of a seaman on the T. that, after the collision occurred, the captain of the T. said to him and his fellow seamen, "Boys, we musn't allow but what these lights were burning all right." This testimony was contradicted by the captain, lookout, steward, and mate of the T., and the wheelsman of the A., and there were circumstances to discredit the testimony of the T. seaman. The captain and seaman of the A. admitted that they did not look, after the collision, to see if lights were burning on the T. *Held*, that the evidence was insufficient to show a want of a red light on the T.

3. SAME.

The assertion of the captain of the A. that the T., though sailing closehauled, having the right of way, and bound to hold her course, swung seven or eight points in twice her length and ran under the bows of the A., was so manifestly improbable and impossible as to discredit his whole testimony.

In Admiralty. Libel by Warren Low against the schooner Mary Augusta, her tackle, etc., and cross libel by Joseph M. Higgins and another against Warren Low. Decree for libelant, Warren Low.

Walter C. Noyes and Frank B. Brandegee, for libelant.

Samuel Park and Edward S. Dodge, for claimants and cross libelants.

TOWNSEND, District Judge. On June 24, 1892, at 11 o'clock at night, near Race rock in Long Island sound, the schooner Mary

Augusta was sailing free before the wind on a course of about E. by S., and the schooner Artemas Tirrell was sailing closehauled upon her port tack on a course of about W. ½ N. It was a good night for seeing lights. The wind was between S. S. W. and S. W. by S. Both vessels were heavily loaded. Each vessel kept her course until they were close together, when the master of the Mary Augusta put her helm up, and kept off. The master of the Tirrell almost immediately did the same. Then the master of the Mary Augusta put her helm hard down, and struck the Tirrell on her port quarter near the stern. Both vessels were damaged; the Tirrell soon filled and sank; the Mary Augusta put into New London harbor.

Under the circumstances stated above, the Mary Augusta would clearly be alone liable. She had the wind free, and was bound to keep out of the way of the Tirrell. The master of the Tirrell kept his course, as he had a right to do, until just as the Augusta was about to strike him. Then he used his best judgment, and, by putting his wheel hard up, tried to ease the blow. The preponderance of evidence shows that the collision followed so quickly that the Tirrell's course was not materially changed. The change, if any, did not contribute to the collision or increase the damage. Even if it was an error of judgment it was committed in extremis, and, in the absence of other qualifying conditions, was not a fault. Bentley v. Coyne, 4 Wall. 509; The Havilah, 33 Fed. Rep. 875; Id., 50 Fed. Rep. 333, 1 C. C. A. 519; The E. A. Packer, 49 Fed. Rep. 98.

Counsel for claimants and cross libelants did not press this claim except as incidentally bearing upon the main defense,—the absence of proper lights on the Tirrell. It is strenuously maintained that on the night in question, although it was a good night for seeing lights, and the master of the Augusta was forward, looking for lights, and saw the Tirrell when a quarter of a mile off, no lights were visible on her. And, in support of the testimony of the witnesses on the Mary Augusta to this effect, the claimants introduced the deposition, taken after the close of the hearing in court, of one Weaver, one of the seamen on the Tirrell, who swore positively that immediately after the collision he went forward and examined the red light, and found it burning so dimly that he could just see a very small blaze with his face close to the glass by climbing up in the rigging; that thereafter the cook, under orders of the mate, took it down, cleaned it, and replaced it; that it had gone out on his watch two or three times before; that when they got into the wharf that night the captain said to the mate and him, "Boys, we mustn't allow but what these lights were burning all right," and that he replied he was not going to perjure himself for him or anybody else. He further testified that, when he went out with the rest to look after the schooner the following morning, the captain told him to take the light out of the rigging, and that he then looked at the light and saw it was not burning. If the story of this witness is to be believed, it not only discredits the testimony of the other witnesses on board of the Tirrell, but it destroys the effect of the testimony of the disinterested witnesses on the wrecker,

who testified that when they went out to the Tirrell the following morning her red light was still burning brightly. A careful examination of the testimony of the witness discloses, as bearing upon its credibility, the following circumstances:

First. His testimony that the red light was not visible at the time of the collision is contradicted by the captain, lookout, steward, and mate of the Tirrell, and by Hausen, the wheelsman of the Augusta. His testimony as to the trimming of the lights after the collision, and that the captain told him what to swear to about lights, is denied by the captain. I attach little importance to the fact that this testimony was not denied by other witnesses, as Weaver's deposition was taken under a stipulation that, as he was to contradict certain statements of Capt. Low, only Capt. Low's testimony should be introduced in rebuttal. His testimony that the red light was not burning the following morning is denied by the captain and engineer of the wrecking steamer Scott. I have not considered the depositions of other witnesses on this point subsequent to the trial, as, under the stipulation, I think libelants had no right to call any one except Capt. Low to rebut Weaver.

Second. Certain statements of the witness are so improbable as to raise a serious question as to their truth. On his cross-examination Weaver swears that after he left the Tirrell, and before any conversation with anyone on board the Augusta, he received a letter from her captain, asking him simply whether he was aboard the Tirrell at the time of the collision, to which he replied that he was. He further swears that, having gone from New London to various places, he went to New York to ship again, and there, in a shipping office the name of which he did not know, but into which he happened to go the day before giving his deposition, to see if there were any sights, and without having intimated to anyone that he was going there, he met Capt. Bowden, the captain of the Augusta; that he did not talk over his testimony with the captain, nor the captain with him, although he came with the captain from New York to New London, but simply told him he would testify if summoned; that he was paid a witness fee the amount of which he did not know, and that no one, unless they were mind readers, could have told, the week before, that he would testify as to the declarations of the captain of the Tirrell. On the redirect he was shown a letter written by him to a Mr. Joy, one of the owners of the Augusta, in which the witness stated his inability to see the light except with his face close to the glass, but made no reference to the other parts of his testimony heretofore referred to. And yet, weeks before his deposition was taken, counsel for claimants had stated that they desired to take the deposition of a witness who would testify to certain declarations made by the captain of the Tirrell.

If the testimony of this witness be discredited, there remains, as already stated, the testimony of the four witnesses on the Tirrell that the lights were burning well, and of Hausen, the wheelsman on the Mary Augusta, who admits that, after the vessels struck, he could see a red light on the port side of the Tirrell, which was

burning brightly. The master of the wrecking tug who went out to the Tirrell the morning after the collision, apparently a competent and disinterested witness, testified that her red light then appeared to be burning brightly. His testimony is corroborated by that of the engineer of the tug. The captain of the Augusta saw no lights, but when he called to the captain of the Tirrell at the time of the collision, "Where are your lights?" and the captain of the Tirrell replied, "They are up," he did not look to see whether they were burning or not. One sailor, who was below on the Augusta, swore that he saw no lights on the Tirrell after the collision, but admits that he did not look to see whether they were burning. It is significant that the mate and cook of the Augusta were not called as witnesses. The deck hand on the wrecking tug saw no light burning on the Tirrell the morning after the collision. In view of the number, character, and appearance of the witnesses who testified that the lights were burning, and of the character of their testimony, as compared with the testimony to the contrary, I feel obliged to disregard the testimony of Weaver. I am of the opinion that the burden of proof on the part of the Tirrell of compliance with the statute as to lights has been successfully maintained.

There is much force in the suggestion of counsel for libelants that the question of presence or absence of the red light is not material to the decision of this case. The captain of the Augusta testified that he saw the Tirrell a quarter of a mile off, and was then able to tell that she was a schooner sailing by the wind on her port tack, and that if the Tirrell had held her course there would have been no difficulty in his keeping out of her way, and there would have been no collision; that it was the Tirrell's change of course that caused the collision, and that, therefore, whether she had lights burning or not, was not directly the cause of the collision. Furthermore, the captain and wheelsman of the Augusta locate the Tirrell as about a point on the Augusta's starboard bow when she was at a distance of a quarter of a mile. In that event it would be the green light of the Tirrell which would be more plainly visible to those on board the Augusta. Now, even Weaver testifies that there was never any trouble about the green light, and the evidence that it was burning brightly is only negatived by the testimony of the captain of the Augusta and the seaman who did not look for lights. It may, then, be fairly assumed that the green light was burning properly on the Tirrell. The captain of the Augusta, having seen the Tirrell at the distance of a quarter of a mile, and having ascertained her course, was bound to keep out of her way.

In view of the irreconcilable conflict of testimony, certain other matters bearing upon the question of probabilities demand consideration. The testimony of the captain of the Augusta as to the Tirrell's alleged change of course is as follows:

"Question. And she began to change her course when you were about three ship's lengths apart? Answer. Yes, sir. Q. As nearly as you can state it, the Artemas Tirrell swung seven points out of her course in the distance of

a ship's length and a half, did she? A. It takes rather more than a ship's length and a half to do it. Q. If you were three lengths apart when you began to change, this would be so, would it not? A. Yes; but when we came together we were almost a length across her bows. Q. So that would make it about two ship's lengths, then? A. Yes."

And again:

"Q. And if she had held her course, you would have gone out of her way; is that it? A. Yes, sir. Q. And you say that, seeing that, after you had changed your course and gone out of her way, she deliberately changed her course seven or eight points and ran under your bows? A. Yes, sir."

The assertion that a vessel sailing closehauled, having the right of way, and bound to hold her course, swung seven or eight points in twice her length, and ran under the bows of a vessel sailing free, seems to me so manifestly improbable and impossible as to throw discredit upon the whole testimony of this witness. There is a conflict of testimony as to the respective locations of the two vessels just prior to the changes of course. The witnesses for the Tirrell locate the Augusta about half a point or a point off the Tirrell's port or weather bow. The witnesses for the Augusta locate the Tirrell about a half a point to a point off the Augusta's starboard or weather bow. It will be observed that the conflict is within a narrow compass, a matter of from one to two points. It seems to me probable, as is suggested by counsel for claimants, that the two vessels must have been approaching each other on courses which involved the risk of collision. For some reason not satisfactorily explained, the Augusta failed to keep out of the way of the Tirrell until the collision was inevitable.

I have not discussed the evidence upon the angle of collision, because none of the evidence introduced by the libelants is admissible under the stipulation of counsel heretofore referred to, as it was understood by the court, and the single witness introduced by the claimant on this point was not an expert, and did not show sufficient acquaintance with such blows to make his testimony of much value. Much of the difficulty which I have found in the decision of this case arises from the misunderstanding of counsel after the close of the hearing in court as to the character and extent of the evidence to be thereafter taken by deposition.

Let a decree be entered in favor of the libelant, Warren Low.